(58 South. 827.)

No. 19,395.

STATE v. CLOUD et al.

(May 20, 1912.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW (§ 593*) — CONTINUANCE— GROUNDS—ABSENCE OF COUNSEL.

The trial judge does not abuse the discretion vested in him in refusing a continuance on the ground of absence of counsel, where the mover is represented by other counsel who are present.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1320; Dec. Dig. § 593.*]

2. CRIMINAL LAW (§ 1171*)—APPEAL—HARMLESS ERROR—REMARKS OF COUNSEL.

A verdict, approved by the trial judge, will not be set aside because of improper remarks by the district attorney, unless the jury were certainly influenced by such remarks, and that they contributed to the verdict.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3126, 3127; Dec. Dig. § 1171.*]

3. CRIMINAL LAW (§ 957*)—TRIAL—VERDICT— IMPEACHMENT BY JUROR.

A juror cannot be heard to impeach his verdict. And remarks of a juror, made subsequent to the trial, cannot be testified to by strangers.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2392–2395; Dec. Dig. § 957.*]

Appeal from Third Judicial District Court, Parish of Bienville; B. P. Edwards, Judge.

William Cloud and another were convicted of murder, and appeal. Affirmed.

Wimberly & Reeves and Richardson & Richardson, for appellants. Walter Guion, Atty. Gen., Wm. C. Barnette, and G. A. Gondran (E. H. McClendon, of counsel), for the State.

SOMMERVILLE, J. Defendants are charged with murder; and they appeal from a verdict of guilty without capital punishment, and a sentence condemning them to hard labor in the penitentiary for life.

[1] A bill of exceptions is taken to the ruling of the court in refusing a continuance, based on the ground of the absence of counsel. They allege in their motion that they had employed Mr. Wilkinson, who had suddenly withdrawn from the case, on account of sickness, and after having prepared it. The reasons of the court, contained in the bill of exceptions, for overruling or denying the motion for such continuance, is that defendants were represented in court by their leading counsel, two members of the bar, and a third member, who had recently been employed. We are of the opinion that the trial judge did not abuse the discretion vested in him in refusing a continuance. The accused were represented by counsel of their choice. The employment of Mr. Wilkinson was subsequent to the employment of the counsel who actually represented defendants on the trial of the cause, and other able counsel were employed by them to take the place of Mr. Wilkinson.

[2] The next bill of exceptions is to a remark made by counsel assisting the district attorney, in his argument before the jury, to the effect that it was reasonable to presume that the information concerning the murder had reached Alberta, a town in the neighborhood, in the same manner that one of the defendants had reached town; that is, in other words, the information had reached the town by a messenger. It is claimed that this statement was greatly to the injury and hurt of defendants; but there is no request in the record to the judge to charge the jury to disregard the presumption of counsel in argument. Counsel for defendants argue that the time of the killing and the time that defendant Zuma Cloud reached Alberta, and the time it would take a person to go from the place deceased was killed at, are

pertinent and material questions involving the guilt or innocence of the accused. The statement of counsel for the state was only a presumption or deduction expressed by him in the course of his argument, which was permissible. It was not stated as a fact; it was simply argued by counsel that such might be presumed to be the case. We fail to see how the jury might have been influenced by the remark.

To justify this court in setting aside the verdict of the jury, approved by the trial judge, on the ground of improper remarks made by a district attorney, it would have to be very thoroughly convinced that the jury was influenced by such remark and that it contributed to the verdict. The district judge in this case saw the jury, heard what the assistant to the district attorney said, and listened to all of the evidence adduced. If he thought that the verdict was not just, but was based upon prejudice, resulting from anything said by the district attorney, we would be slow to believe that he would have overruled a motion for a new trial, or let the verdict stand.

[3] The next bills of exceptions are taken to the refusal of the court to grant a new trial. Defendants, in their motion, allege that one of the jurors, Duncan Johnson, was examined on his voir dire, and that he stated he knew nothing about the case and had no opinion thereon; that he was not prejudiced for or against the defendants; and that he could and would give them a fair and impartial trial. They further alleged that said juror was prejudiced; that since the trial he (the juror) had expressed himself to the effect that he (Duncan Johnson) "knew that old man Cloud was looking for Matthews; and that he (Johnson) was at Norreds, and Cloud was there looking for Matthews," the murdered man. The juror, Duncan Johnson, was put on the stand by the district attorney, and he testified again

that he had been without any opinion as to the guilt or innocence of the accused when he went into the jury box, and that he was not prejudiced for or against the defendants, and that he could have and had given them a fair and impartial trial. He was then asked by counsel for the defendants as to the declaration recited above, to the effect that he knew that old man Cloud was looking for Matthews, the murdered man, etc. Objection was made to the question, and the objection was sustained by the trial judge. Counsel then undertook to place other witnesses on the stand to testify that they had heard Duncan Johnson, since the trial, declare that he "knew that old man Cloud was looking for Matthews; that he (Johnson) was at Norreds, and Cloud was there looking for Matthews." The evidence of these witnesses was objected to, and it, too, was ruled out.

Jurors should be wholly unexceptionable, and the usual test to judge of their fitness and competency is on their examination on their voir dire; and if they do not answer truly, and fail to disclose their disability the prisoner is not to be deprived of his right when he subsequently discovers the objection. We hold in the case of State v. Nash & Barnett, 45 La. Ann. 1143, 13 South. 732, 734, that where the juror was examined on his voir dire and gave false answers to questions touching his qualifications, in such case the exception to the juror's competency was a sufficient ground for a new trial; and there are other decisions to the same effect, both in this state and in other states. But we have also held that, if the juror has answered falsely, the fact of incompetency must be shown by other testimony than that of the juror. State v. Whitesides, 49 La. Ann. 356, 21 South. 540. And in the case of State v. Price, 37 La. Ann. 218, where "several members of the jury immediately, or shortly after their discharge, openly stigmatized the verdict

as iniquitous and stated they were convinced of the defendant's innocence," and proceeded to detail what took place in the jury room, and how the jurymen who were convinced of the defendant's innocence were induced to forswear and join in a verdict of guilty; and where six jurymen were offered to be sworn to prove these allegations, we held that the judge properly refused to hear them. The rule is of universal acceptance that jurymen will not be permitted to impeach their own verdict, and thus declare their own perjury, for one oath would but offset the other. Both public decency and public policy alike demand the rejection of such testimony. State v. Caldwell, 3 La. Ann. 435; State v. Brette, 6 La. Ann. 653; State v. Millican, 15 La. Ann. 557.

"An offer was then made to prove by others that these jurymen had made these assertions to them; and this was also refused, for that would have been receiving at secondhand the impeachment of the verdict by the jurymen who had rendered it, and if they cannot be heard to impeach it by their own testimony, much less can their declaration be received when filtered through the repetition of third persons."

In the case of Straker v. Graham, 4 Meeson & Welsby's Reports, 721, where an attorney in the case made affidavit that he had been informed immediately after the trial that the verdict was decided by drawing lots, that he had applied to one of the jurymen, who had admitted to him that that was the case, the organ of the court said:

"I wish it to be understood clearly and distinctly, that we cannot take notice of the affidavit at all."

And in the case of Drummond v. Leslie, 5 Blackf. (Ind.) 454, the court said:

"The second objection is founded on the affidavit of a stranger that he had heard several of the jurors say that each had proposed a certain sum; that the aggregate was divided by twelve; and that the amount thus obtained was adopted as the verdict. We shall not stop to inquire whether this affidavit shows any misconduct in the jury or not. Supposing it does; the affidavit was inadmissible. The affidavits of the jurors themselves of their misconduct are not admitted to impeach their verdict. Dana v. Tucker, 4 Johns. (N. Y.) 487. A fortiori an affidavit of a stranger of their statement on the subject when not under oath ought not to be received."

And in Wilson v. People, 4 Parker, Cr. R. (N. Y.) 631, the court say:

"The affidavits of Mr. Smith and Mr. Kimball, as to information from jurors concerning what took place in the jury room, are utterly inadmissible. They are far worse in principle than the affidavits of jurors themselves to impeach their verdict, inasmuch as the jurors, without oath, have given information which is not admissible on their own statement under oath." 1 Bishop, New Criminal Procedure, § 2171.

We are therefore of the opinion that the testimony of the juror as to his disqualifications was properly excluded on the trial of the motion for a new trial, and that his declarations to third persons were equally inadmissible, and were properly excluded.

There is no error in the judgment appealed from, and it is affirmed.