(78 South. 240)

No. 22873.

STATE v. SHOEMAKE.

(Jan. 3, 1918. On Rehearing, April 1, 1918.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW ☞1119(1)—APPEAL—RECORD—SHOWING OF PREJUDICE.

The opening of court with prayer by the judge is not usual; and, in the absence of the petitions of the prayer showing prejudice or injury, it is not cause for setting aside and reversing a verdict and sentence of the trial court.

2. CRIMINAL LAW ☞1153(1) — APPEAL — IMMATERIAL EVIDENCE.

Immaterial evidence should not go to the jury. It has a tendency to prolong the trial, to confuse the minds of the jurors, and to becloud the issues. But the court will accept the trial judge's finding to the effect that the evidence was material, unless it be clearly shown that it was immaterial.

3. CRIMINAL LAW ☞1171(1) — APPEAL — HARMLESS ERROR — REMARKS OF DISTRICT ATTORNEY.

The Supreme Court will not set aside a verdict approved by the trial judge on the ground of improper remarks made by the district attorney, unless that court were thoroughly convinced that the jury was influenced by such remarks, and that the remarks contributed to the verdict found.

Appeal from Fifth Judicial District Court, Parish of Winn; Cas Moss, Judge.

George Shoemake was convicted of murder, and he appeals. Affirmed.

W. M. Wallace, of Winnfield, for appellant. A. V. Coco, Atty. Gen., and Julius T. Long, Dist. Atty., of Winnfield (Vernon A. Coco, of New Orleans, of counsel), for the State.

143 LA.—3

PROVOSTY, J. The accused was convicted, without capital punishment, of having murdered one Mrs. Jesse Roberts.

He objected to the juror E. H. Buchanan, on the ground that his name did not appear on the venire list, that the name appearing was E. A. Buchanan, and that the person intended to be designated thereby was more probably E. A. Buchan than E. H. Buchanan, because a person by the former name had lived in ward 4 a great many years and had but recently moved to ward 7. The learned trial judge was satisfied that E. H. Buchanan was the right man, a conclusion we find no reason for doubting the correctness of.

The court was opened with prayer. This was in the presence of the jury. A minister of the gospel and another witness were allowed, over objection, to testify at considerable length to the decedent's having joined the church shortly before her death, and having attended religious meetings. In his argument to the jury the district attorney brought the element of religion into play by winding up a fervid period with the following:

"You are called upon, gentlemen, to say whether or not under the proof in this case there is anything to Christian experience and Christianity and whether Christianity in this parish is dead."

In opening the court with prayer there may be no harm, although we have never heard of such a thing being done before; in showing that the decedent had joined the church, and had thereafter continued to attend church meetings, there may have been no harm; and in this appeal to the religious sentiment of the jury there may have been no special harm. But while this may be so when these things are considered separately, or disconnectedly, we can readily understand how together, or in combination, their effect might well have been to envelop the trial in an atmosphere of religion, such as might have beclouded the issues, to the dis-

advantage and prejudice of accused, and thus deprived him of the right which an accused has that his trial should be conducted in the clear, unmisted light of the law and the evidence. The transcript leaves the judicial mind in grave doubt whether this did not happen. If this evidence as to the joining of the church, etc., was to have no effect, why introduce it? And if the appeal to the religious sentiment was to have no effect, why make it? The safer course is, we think, to grant a new trial.

The other bills of exception are without merit.

The judgment is therefore set aside, and the case is remanded for trial.

O'NIELL, J., concurs in the decree.

## On Rehearing.

SOMMERVILLE, J. A review of the record convinces us that the matters before considered, and forming the basis of our opinion, are not sufficient upon which to set aside and reverse the verdict and sentence in this case.

[1] Defendant objected to the offering of prayer by the judge at the opening of the court, in the presence of the jury. He says that the prayer could only have the effect of prejudicing the jury against the accused, but he does not recite any of the petitions of the prayer offered, or tell how he was affected prejudicially. In the absence of prejudice or injury being shown by defendant, the court cannot presume that either was done to him.

The judge says that it is his custom to open court each day with a prayer, general in its terms, and that the jury, and no particular officer of the court, was mentioned in the prayer on the occasion referred to. Since such was the custom of the court, and no one was mentioned in the prayer, we fail to see how the prayer could have prejudiced the jury for or against the accused; and we believe that it did not.

A prayer for divine guidance in discharging the duties of the high office which the judge administers would suggest to the mind that he who offered the prayer was a virtuous and a merciful man, and that those qualities, combined with a knowledge of law, would make of him a good judge. It does not suggest injury being done to any one.

The opening of court with prayer by the judge is not usual, but it is not forbidden. The crier of the court usually performs that duty when he opens court and cries, "God save the state and this honorable court." No one has ever suggested that that officer had acted prejudicially or injuriously to an accused person, or to any one else who was before the court.

[2] Regarding the complaint that immaterial evidence was admitted, we are disposed to accept the trial judge's finding to the effect that the evidence was material. We are not in so good a position as he was to rule upon the point. The bill is not sufficient to show that irrelevancy.

The accused is assured of a speedy trial, and he would be deprived of that right if immaterial evidence to any great extent were permitted to be introduced on the trial. And, further, immaterial evidence would serve to confuse the minds of the jurors, and it would becloud the issues. But the trial of this case did not consume much time; the testimony complained of was short, and it was not calculated to confuse.

[3] Coming now to the remarks of the district attorney about Christianity, which were most general in terms, we fail to see anything objectionable. Accused did object to them, and he filed a bill. But a bill of exceptions must be taken to a ruling by the court on some objection made in the course of the trial, or to a part of the judge's charge.

If the remarks of the district attorney were objectionable in the opinion of the accused, he should have requested the judge to stop the district attorney, or that he charge the jury to disregard the objectionable

statements. Defendant did not make any such request of the judge; he invoked no ruling by the court with reference thereto, and he cannot therefore be heard to complain thereof. State v. Boswell, 45 La. Ann. 1158, 14 South. 79; State v. Young, 114 La. 686, 38 South. 517; State v. Brannon, 133 La. 1027, 63 South. 507; State v. McKowen, 126 La. 1075, 53 South. 353; State v. Oteri, 128 La. 939, 55 South. 582, Ann. Cas. 1912C, 878.

To justify the Supreme Court in setting aside a verdict approved by the judge on the ground of improper remarks made by the district attorney it would have to be very thoroughly convinced that the jury was influenced by such remarks, and that they contributed to the verdict found. State v. Brown, 126 La. 12, 52 South. 176; State v. Montgomery, 121 La. 1005, 46 South. 997; State v. Mitchell, 119 La. 374, 44 South. 132; State v. Young, 114 La. 686, 38 South. 517.

The remark of the district attorney with reference to Christianity was not calculated to have any influence on the minds of the jurors, and it certainly did not contribute to the verdict found. The judge states in his per curiam to a bill of exceptions that defendant was charged with the murder of a female child some 16 years of age, yet the verdict found him guilty without capital punishment. The remark of the district attorney appears, if it had any effect, to have been favorable to the accused.

The judgment appealed from is affirmed.